**TEXAS LIQUOR CONTROL BOARD,**
Appellant,

v.

**Robert E. LONGWILL, d/b/a**
**Club Apache, Appellee.**

**No. 7639.**

Court of Civil Appeals of Texas.

Texarkana.

June 22, 1965.

Rehearing Denied July 20, 1965.

Waggoner Carr, Atty. Gen., Howard M. Fender and Brady S. Coleman, Asst. Attys. Gen., Austin, for appellant.

Horace G. Goodrich, Dallas, for appellee.

CHADICK, Chief Justice.

This is an appeal from the judgment rendered by a district court in a proceeding to set aside the order of the Administrator of the Texas Liquor Control Board cancelling a private club registration permit. The Texas Liquor Control Board's second motion for rehearing is granted and both opinions of this court heretofore filed are withdrawn and the following opinion ordering reversal and rendition of the trial court judgment is substituted.

The Administrator of the Texas Liquor Control Board on the 14th day of April, 1964, following a hearing, ordered the permit of Club Apache canceled. An appeal from this action of the Administrator was perfected to a district court of Dallas County. In the course of the District Court hearing the Judge presiding said: "I am going to go with the Attorney General and rule that that part of the statute giving a Trial de novo as unconstitutional. Now, then, we have an examination into whether or not the administrator had substantial evidence before him when he made his ruling or whether he acted arbitrarily, unreasonably, or capriciously, are those the words generally used?" At the end of the hearing a decree was entered "that the Administrator's order canceling the license and privilege to do business of plaintiff * * *, is a nullity, and * * * said action of the administrator of the Liquor Control Board of the State of Texas be and it is hereby set aside and held for naught".

The Texas Legislature in 1961 created a regulatory and licensing system for private clubs where alcoholic beverages are stored and consumed by an act which is codified as Article 666-15(e) of the Texas Liquor Control Act (Vernon's Ann.Texas Penal Code). The directions pertaining to review on appeal contained in Subdivision 7a of the Article appear to be in conflict. The subdivision provides that on appeal from the Texas Liquor Control Board's (or its Administrator's) [1] order canceling a permit trial in the District Court shall be de novo under the rules regulating ordinary civil suits, that the court will consider only such evidence as would be proper if the case on appeal was one appearing in the first instance in the district court, and that the Substantial Evidence Rule shall have no application in the proceedings of the district court. These directions clearly command that "a full civil trial on the facts as well as the law" will be had in the district court, in the sense that a de novo trial is defined in such cases as Zurich General Accident & Liability Ins. Co. v. Rodgers, 128 Tex. 313, 97 S.W.2d 674 (1936); S. Shultz & Bro. v. W. S. Lempert, 55 Tex. 273 (1881); and Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681 (1941).

1. Reference hereafter to either the Texas Liquor Control Board or Administrator should be understood generally to refer to both.

However, paragraph (d) of Subdivision 7a reading as follows: "The order, decision or ruling of the Board or Administrator may be suspended or modified by the District Court pending a trial on the merits, but the final judgment of the District Court shall not be modified or suspended pending appeal" assumes and impliedly directs that the orders of the Board or Administrator are to continue in effect during the appeal process unless suspended or modified by the District Court pending a trial on the merits. Giving effect to this provision is inconsistent with a trial de novo as just discussed according to Southern Canal Co. v. State Board of Water Engineers, 159 Tex. 227, 318 S.W.2d 619 (1958), where Chief Justice Calvert said: "The sine qua non of a de novo trial as that term is used to describe a retrial of a matter or controversy theretofore tried by another tribunal is the nullification of the judgment or order of the first tribunal and a retrial of the issues on which the judgment or order was founded. When jurisdiction of the second tribunal attaches, the judgment or order of the first tribunal is not merely suspended, but is nullified. Examples of that type of trial are found in our statutes applicable to appeals from Justice Court judgments and from awards made by the Industrial Accident Board." Very recently in Chemical Bank & Trust Co. v. Falkner, Tex., 369 S.W.2d 427 (1963), citing Southern Canal Co. supra as authority, it was said: "An appeal under the substantial evidence rule negatives any idea that the Board's order approving the application is vacated or nullified by the filing of the appeal. Southern Canal Company v. State Board of Water Engineers, 159 Tex. 227, 318 S.W. 2d 619 ".

■ These incompatible directions of Subdivision 7a appear to be equally material and seem to require the district court when hearing the appeal to treat the order of the Board or Administrator as being simultaneously both valid and null. In this case is the de novo trial in the District Court to be one in which the district court examines the proof before it to decide whether or not the evidence reasonably supports the Administrator's order cancelling Club Apache's private club registration permit, or is the trial to be de novo as that term is defined in Zurich General Accident & Liability Ins. Co. v. Rodgers, 128 Tex. 313, 97 S.W.2d 674? A solution is to be found in the approach suggested in Scott v. Texas State Board of Medical Examiners, Tex., 384 S.W.2d 686 (1964), where it is said: "The validity of a full de novo appeal requirement turns on the nature of the act of the administrative agency contemplated by the statute to which the appeal requirement refers".

Before enactment of Art. 666–15(e) in 1961 the courts on several occasions held that cancellation of a Liquor Control Board Permit by the Board or its Administrator was. an administrative function, and that on appeal from the agency proceeding to the District Court the reasonableness of the order was the question to be determined. Review of the agency order in the District Court, these cases hold, is governed by the "Substantial Evidence Rule", that is, the evidence adduced in the reviewing court is to be examined to determine if it reasonably supports the order in question. See Texas Liquor Control Board v. Warfield, 110 S.W. 2d 646 (Tex.Civ.App.1937 no writ); Texas Liquor Control Board v. Jones, 112 S.W.2d 227 (Tex.Civ.App.1937 no writ); Texas Liquor Control Board v. Lanza, 129 S.W.2d 1153 (Tex.Civ.App.1939, writ dism'd, Judg. cor.); Lowe v. Texas Liquor Control Board, 255 S.W.2d 252 (Tex.Civ.App.1952 no writ); and Texas Liquor Control Board v. Raspante, 308 S.W.2d 136 (Tex.Civ.App. 1957 no writ). In State v. Bush, 151 Tex. 606, 253 S.W.2d 269 (1952), a case where application for renewal of a retailer's permit to sell wine and beer had been denied, the Supreme Court said:

"The filing of an application for a license and the hearing and action thereon is not a civil or criminal cause. The power and authority granted to the Board, Administrator and County

Judge with regard to issuance, denial, *cancellation* or supervision of such permits is merely the exercise of an administrative function and duty imposed by the Act. Jones v. Marsh, 148 Tex. 362, 224 S.W.2d 198; State v. De Silva, 105 Tex. 95, 145 S.W. 330; Bradley v. Texas Liquor Control Board, Tex.Civ.App., 108 S.W.2d 300, no writ history; Texas Liquor Control Board v. Jones, Tex.Civ.App., 112 S.W. 2d 227, no writ history; Texas Liquor Control Board v. Floyd, Tex.Civ.App., 117 S.W.2d 530, no writ history." (Emphasis added).

Subdivisions 7 and 10 of Art. 666–15(e) lists the grounds upon which the Board may cancel or suspend private club registration permits. Subdivision 7 reads:

"7. The Board or Administrator may cancel or suspend for a period of time not exceeding sixty (60) days, after notice and hearing, any Private Club Registration Permit or any renewal of such Private Club Registration Permit, upon finding that the permittee club has:

"(a) Sold, offered for sale, purchased or held title to any liquor whatsoever so as to constitute an open saloon as defined in Section 3 of the Texas Liquor Control Act.

"(b) Refused to allow any authorized agent or representative of the Texas Liquor Control Board or any peace officer to come upon the club premises for the purposes of inspecting alcoholic beverages stored on said premises or investigating compliance with this Act or any provision of the Texas Liquor Control Act.

"(c) Refused to furnish the Board or its agent or representatives when requested any information pertaining to the storage, possession, serving or consumption of alcoholic beverages upon club premises.

"(d) Permitted or allowed any alcoholic beverages stored on club premises to be served or consumed at any place other than on the club premises.

"(e) Failed to maintain an adequate building at the address for which said Private Club Registration Permit was issued.

"(f) Caused, permitted or allowed any member of a club in a dry area to store any liquor on club premises except under the locker system.

"(g) Caused, permitted or allowed any person to consume or be served any alcoholic beverages on the club premises at any time on Sunday between the hours of 1:15 a. m. and 1:00 p. m., or any other day at any time between the hours of 12:15 a. m. and 7:00 a. m.

"(h) Violated any provision of the Texas Liquor Control Act or this Act."

while Subdivision 10 is in this language, to-wit:

"Any permittee who violates or assists, aids or abets any violation of this Act or any provision thereof shall subject such permit to suspension or cancellation in accordance with the provisions of the Texas Liquor Control Act."

This, Subdivision 10, can refer only to Art. 666–12 of the Texas Liquor Control Act, empowering the Board to cancel or suspend permits when it is found that any of a long list of acts or omissions have occurred. Clearly Subdivision 10 adds all of the grounds for suspension and cancellation found in Art. 666–12 to the grounds for suspension and cancellation listed in Subdivision 7, Art. 666–15(e). Among the grounds for cancellation enumerated in Art. 666–12 are: "(6). That the place or manner in which the permittee conducts his business is of such nature which, based on the general welfare, health, peace, morals, and safety of the people and on the public

sense of decency, warrants the cancellation or suspension of the permit."

By the quoted paragraph in Art. 666–12 the Legislature conferred a far ranging discretionary power upon the Board. The legislative intent appears to be that the Board may cancel a permit when it finds from evidence admitted at a proper hearing that the continued operation by a permittee under a particular permit will be inimical to the public welfare, health, peace, safety, etc. The conduct, or particularities thereof, repugnant to the general welfare, etc., which will justify cancellation is not specified. The legislature delegated its authority to the Board so that the Board might use its insight and discernment in these broad fields. It is true, as reference to the Texas Liquor Control Act will disclose, that numerous acts and omissions specified by the legislature as comprising grounds for cancellation are listed in Art. 666–12 and 666–15(e), but the act does not limit cancellation to those alone, the listed acts or omissions are in addition to the grounds the Board is empowered to select by paragraph (6) of Art. 666–12 as a basis for cancellation.

The following extract from Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150, was quoted in Key Western Life Ins. Co. v. State Board of Insurance, 163 Tex. 11, 350 S.W.2d 839 (1961), and is referred to with approval in other opinions by the Supreme Court. In Prentis it is said: "A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power". In his Administrative Law Treatise, Vol. 1, p. 287–288, Sec. 5.01, Professor Kenneth C. Davis comments that this definition has produced unsatisfactory practical results and suggests the following as a better rule,

to-wit: "These various difficulties are avoided by saying simply that adjudication resembles what courts do in deciding cases, and that rule making resembles what legislatures do in enacting statutes. Then particular problems of classification can be resolved by keeping an eye on the consequences of the particular classification." Very recently the Supreme Court of Texas in Scott v. Texas State Board of Medical Examiners, 384 S.W.2d 686 (1964), at p. 690 said: "An important consideration is whether the administrative action called for by the empowering legislative act involves public policy or is policy-making in effect, or whether the action concerns only the parties who are immediately affected". Prior to the last mentioned case the Supreme Court in Davis v. City of Lubbock, 160 Tex. 38, 326 S.W.2d 699 (1959), said: "The authority to decide whether the continued existence of particular conditions in an area is detrimental to the public health, safety, morals or welfare of the people who inhabit it, or the community surrounding it, * * * is a legislative prerogative which may be exercised only by the Legislature itself or on its behalf by an agency to which it has delegated it."

The Board's exercise of the power conferred upon it to establish standards of conduct required of permittee is legislative in nature. This policy-making aspect of the Board's cancellation procedure stamps the function of the Board in this field as administrative rather than judicial. The conclusion that the Board's action in cancelling Club Apache's permit is an administrative act necessitates the further conclusion that a review of its order may only be made to determine whether substantial evidence supports it. And as previously suggested is in harmony with all cancellation cases decided since 1937. The legislative direction for review of a different character conflicts with the provisions of Sec. 1, Art. II, Texas Constitution, Vernon's Ann.St., dividing the functions of government and is void. Chemical Bank and Trust Company v. Falkner,

Tex., 369 S.W.2d 427 (1963); Kost v. Texas Real Estate Commission, 359 S.W. 2d 306 (Tex.Civ.App.1962, writ refused); Southern Canal Company v. State Board of Water Engineers, 159 Tex. 227, 318 S.W. 2d 619 (1960).

■ The trial judge apparently attempted to apply the substantial evidence rule, as he understood it, to the evidence adduced in court, but he mistakenly concluded that the evidence would not support the Administrator's order. Substantial evidence was introduced in the district court that would reasonably and plausibly support findings that Club Apache sold beer in a dry area in violation of the Liquor Control Act and that the Club served liquor to customers for beverage purposes in such way as to constitute it an "open saloon" as that term is defined in Art. 666–3(a). The judgment of the trial court is reversed and judgment rendered that appellee take nothing by its suit.

FANNING, J., concurs in the opinion.

DAVIS, J., dissents.

DAVIS, Justice.

I dissent.

The opinions handed down on April 20, 1965, and on May 25, 1965, have been withdrawn, and I dissent.

This suit resulted in an appeal by plaintiff-appellee, Robert E. Longwill, d/b/a Club Apache, against defendant-appellant, Texas Liquor Control Board, because appellant had previously canceled the appellee's private club registration permit permanently, that was situated in a dry area in Dallas County, Texas. The appellee alleged that he was issued the private club permit for one year, which actually began on Septemebr 1, 1963, and expired on August 31, 1964. Appellee alleged that he had acquired the permit in the manner and form as prescribed by law. He further alleged that all the prerequisites required

by law, including the necessary inspection and reports preliminary to the issuance of said license, or permit, had been legally obeyed. He further alleged that on February 13, 1964, a search warrant was issued to the appellant or its agent and employees to search and seize all alcoholic beverages found upon the premises of appellee; that appellant, its agents and employees, did enter the premises of appellee and search and seize a quantity of alcoholic beverages, together with all records of appellee, including tax records, records of all members' names and addresses comprising the membership of said club, payroll records, etc. That a hearing was had before the Administrator of the Texas Liquor Control Board on April 13, 1964, to cancel appellee's license; that at such hearing the Administrator proceeded to accept ex parte statements on the matter before him from persons not present or subject to cross-examination, and without giving the appellee the right to cross-examine them. After the hearing, the Administrator of appellant found that the permit issued to appellee should be permanently canceled. The appellee further alleged that the Administrator of appellant did not predicate his findings upon substantial evidence, and that he acted arbitrarily, unjustly, capriciously and illegally in permanently canceling the appellee's permit as a private club. He further alleged that the permanent cancellation of his private club permit actually injured and damaged his property rights, and that he had been irreparably injured and damaged by the acts of the appellant and was in dire peril of losing his means of livelihood by such order.

The Private Club Permit was issued under Article 666–15(e), Texas Penal Code, effective September 1, 1961. Art. 666–15 (e), Sec. 1, subd. 7 reads as follows:

"The Board or Administrator may cancel or suspend for a period of time not exceeding sixty (60) days, after notice and hearing, any Private Club Registration Permit or any renewal of such Private Club Registration Permit,

upon finding that the permittee club has:

"(a) Sold, offered for sale, purchased or held title to any liquor whatsoever so as to constitute an open saloon as defined in Sec. 3 of the Texas Liquor Control Act.

"(b) Refused to allow any authorized agent or representative of the Texas Liquor Control Board or any peace officer to come upon the club premises for the purposes of inspecting alcoholic beverages stored on said premises or investigating compliance with this Act or any provision of the Texas Liquor Control Act.

"(c) Refused to furnish the Board or its agent or representatives when requested any information pertaining to the storage, possession, serving or consumption of alcoholic beverages upon club premises.

"(d) Permitted or allowed any alcoholic beverages stored on club premises to be served or consumed at any place other than on the club premises.

"(e) Failed to maintain an adequate building at the address for which said Private Club Registration Permit was issued.

"(f) Caused, permitted or allowed any member of a club in a dry area to store any liquor on club premises except under the locker system.

"(g) Caused, permitted or allowed any person to consume or be served any alcoholic beverages on the club premises at any time on Sunday between the hours of 1:15 a. m. and 1:00 p. m., or any other day at any time between the hours of 12:15 a. m. and 7:00 a. m.

"(h) Violated any provision of the Texas Liquor Control Act or this Act."

There has been only one appeal from an order canceling a private club permit under Art. 666–15(e), which appeal was dis-missed because the question had become moot. State v. Pool Side Club (Tex.Civ. App.), 360 S.W.2d 923, N.W.H. The record shows that the permit in this case has been renewed for another year. Since the order canceling the permit was made permanent, the rule on the points have been brought forward.

Appellant brings forward three points of error. It contends the trial court erred in holding the testimony adduced against appellee through affidavits at the administrative hearing was a denial of due process and constituted no evidence; in holding that appellant proved no violation of any statute under the Liquor Control Act in the District; and, in not holding that the order canceling the appellee's private club permit was legally supported by substantial evidence and in setting aside and holding for naught said order.

The evidence shows that the appellee owns the building in which the private club is situated, and that the same is mortgaged. It shows that he has in his employ from one to four waitresses; that he can legally make charges for mixing and serving drinks; that one of the parties who made the affidavit that was submitted to the Administrator of appellant was the guest of another member; that he returned on two or three occasions, ordered drinks, and he was charged for the mixing and serving of the drinks, on the theory that he was a guest of the other member, and just as other members were charged. The evidence shows that the other man who made the affidavit entered the club, made application for membership, and paid $5.00 for a one year membership. The evidence shows that the appellee asked him if he had a bottle of liquor, and the man told him that he did not. The evidence further shows that the man told appellee that he only intended to drink a beer. The appellee told him, in effect, that he could be his guest, and he would take a chance. The waitress waited upon him and served him a beer as a guest, and he paid her the service charge. There is no evidence that will show any violation

of any law whereby the appellant could permanently cancel the private club permit.

Appellee contends that he appeared before the Administrator in Austin in an effort to cross-examine his accusers, wherein they sought to cancel his private club permit. Appellant says that neither of the accusers were present at the hearing and did not submit themselves for cross-examination. It may be true that this Administrative Agency has established rules of admitting evidence by affidavit only and are not bound by the rules of evidence that govern judicial proceedings. There are cases that hold that evidence may be presented in the form of affidavit only. 1 T.J. 2d 668, Sec. 26 and the cases cited therein. In a case like the one presented to this court, such action seems to be contrary to every rule of the common law and democratic principles. If the parties who made the affidavit had appeared before the Administrator at the time of the hearing, so that appellee or his attorney could have cross-examined them, they could have shown that there was no violation of the law whatever. In 2 Davis Administrative Law Treatise 38, Sec. 11.02 entitled "Must the Deciding Officers Hear the Witnesses Testify?", is quite an interesting discussion. It points out that there are four Morgan cases that have reached the U. S. Supreme Court. In the First Morgan case, Morgan v. United States of America, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288, in an administrative proceeding, Chief Justice Hughes held that: "The one who decides must hear." In the Fourth Morgan case, United States of America v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429, Justice Frankfurter, in speaking of the evidence admitted at the administrative hearing, said: "Doubts and difficulties incapable of exact resolution confront judgment." The Supreme Court of the United States has consistently held that administrative proceedings have a quality resembling that of judicial proceedings.

Appellant takes the position that the license that was issued to the appellee is only a privilege and is not property or a property right. The license being issued by an agency of the state, although it may be a privilege to exercise a right that they would not be allowed to exercise without it, it is property in the sense of being a thing of value that can lawfully be acquired and held. 36 T.J.2d 589, Sec. 3, and cases cited therein. Webster's Dictionary defines a privilege as "an exceptional law made in favor of or against any individual from *privus,* separate, peculiar, and *lex.* legis, a law. A *right,* immunity, *benefit,* or *advantage enjoyed by a person or body of persons beyond the common advantages of other individuals;* the enjoyment of some desirable right, or an exemption from some evil or burden; a private or personal favor enjoyed; a peculiar advantage; as, the *privilege* of genius. Synonym: Advantage, prerogative, immunity, franchise, *right,* claim, *liberty."* (Emphasis added.) Webster further defines privilege as: "To grant some particular *right* or exemption to; to invest with a peculiar *right* or immunity; as, to privilege representatives from arrest. To exempt from censure or danger; to place in a condition of privilege." (Emphasis added.)

There is a long discussion in 2 Davis Administrative Law Treatise 250, Ch. 15 in an article entitled "Evidence". By Sec. 14.15, p. 328, it says a person shall have the right to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, *and to conduct close examination as may be required for a full and true disclosure of the facts.* Such was not allowed in the case at bar.

Art. 666–15(e), subd. 7a. reads as follows:

"An appeal from any order of the Board or Administrator under this Section refusing, canceling or suspending a permit or license may be taken to the District Court of the County in which the aggrieved licensee or permittee, or the owner of involved real or personal property may reside. The pro-

ceeding on appeal shall be de novo under the same rules as ordinary civil suits, with the following exceptions, which shall be considered literally, viz:

"(a) All appeals shall be perfected and filed within thirty (30) days after the effective date of the order, decision or ruling of the Board or Administrator.

"(b) Such proceedings shall have precedence over all other causes of a different nature.

"(c) All such causes shall be tried before the judge within ten (10) days from the filing thereof, and neither party shall be entitled to a jury.

"(d) The order, decision or ruling of the Board or Administrator may be suspended or modified by the District Court pending a trial on the merits, but the final judgment of the District Court shall not be modified or suspended pending appeal.

"(e) The District Court may consider any evidence and only such evidence as would be proper if the case were one appearing in the first instance in the District Court and it shall arrive at its decision independently of the proceedings below. The Substantial Evidence Rule shall have no application in the proceedings of the District Court."

Appellant undertook to sustain the permanent cancellation of appellee's permit because of the alleged sale by appellee of beer and liquor in such a manner as to constitute the club an open saloon. The suspension or cancellation of a private club permit must depend upon fact issues made by proof of actual occurrences prior to the hearing before the administrative agency. In the case of such cancellation, an appeal must be taken to the district court. In the district court, according to the statutes, the trial must be de novo and the substantial evidence rule does not apply. Scott v. Texas State Board of Medical Examiners

(Tex.Sp.Ct.), 384 S.W.2d 686, citing Key Western Life Insurance Co. v. State Board of Insurance (Tex.Sp.Ct.), 350 S.W.2d 839. It seems that the Legislature by enacting the provisions of Art. 666–15(e), Subd. 7a, PC, as to trial de novo was trying to follow the mandate as laid down by Chief Justice Calvert in Southern Canal Co. v. State Board of Water Engineers (Tex.Sp. Ct.), 318 S.W.2d 619. I would hold that this provision of the Article is *not* unconstitutional.

The findings of fact by the trial judge are supported by the evidence. I would overrule the points of error, and the judgment of the trial court would be affirmed.